## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

GOSHAWK DEDICATED, LTD and )
KITE  DEDICATED, LTD., )
                       )
       Plaintiff,          )   **Case No. 1:05-CV-2343-RWS**
                      )
     v.                   )
                      )
                      )
AMERICAN VIATICAL SERVICES, )
LLC, )
                      )
                      )
       Defendant.       )

---

**NON-PARTY LIFE SETTLEMENT CORPORATION D/B/A PEACHTREE LIFE  SETTLEMENTS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO ENFORCE SUBPOENA AND COMPEL PRODUCTION FILED BY PLAINTIFFS GOSHAWK DEDICATED, LTD. <u>AND KITE DEDICATED, LTD.</u>**

Pursuant to Rules 26(c) and 45(c) of the Federal Rules of Civil Procedure,

Non-Party LIFE SETTLEMENT CORPORATION d/b/a PEACHTREE LIFE

SETTLEMENTS ("LSC") hereby files its Memorandum of Law in response to the

Motion to Enforce Subpoena and Compel Production served upon it by Plaintiffs

GOSHAWK DEDICATED, LTD. and KITE DEDICATED, LTD.

## I.    __INTRODUCTION__

The Subpoena served in this District at issue in this matter, as well as the *identical* Subpoena served by Plaintiffs in the Southern District of Florida, see Subpoena served on LSC in Southern District of Florida, attached hereto as Exhibit "A," are part of an attempt by Plaintiffs to continue to harass and burden LSC, a non-party in the above-referenced action, with *successive* subpoenas requiring production of documents, and now Electronically Stored Information (ESI), in response to duplicative, overbroad, and vaguely worded requests.  Plaintiffs have failed to issue a single subpoena to LSC in the direct litigation that is presently pending between the parties; instead, preferring to served successive, duplicative non-party subpoenas upon LSC in various litigation to which LSC is not a party. The Subpoena issued in this case is inappropriate because, as Plaintiffs are aware, the documents at issue are located in LSC's Florida office.  Moreover, the Subpoena violates the express provisions of Rule 45(c)(1), which states that "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."  As detailed herein, the Subpoena at issue consists of *twenty-four (24)* separate categories of documents that are similar, if not identical to twenty-four (24) categories of documents previously sought by Plaintiffs in a

non-party subpoena served upon LSC in a separate arbitration, *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, ICDR No. 50-198-T-0372-05 (the "LRT Arbitration"). A copy of subpoena served in the LRT Arbitration is attached as Exhibit "B."  As of this date, at great expense, LSC already has produced to Plaintiffs approximately *18,515 pages* in response to its prior subpoena for which Plaintiffs have not paid anything.

Plaintiffs have taken an inappropriate and unreasonable position in an effort to force LSC to produce identical documents and now ESI presently located in the Southern District of Florida in response to a successive and substantially similar subpoena.  For these reasons, among others, Plaintiffs' motion to enforce should be denied.

## II.    PROCEDURAL BACKGROUND

### A.    The Relevant Parties

#### 1.    LSC

LSC, as originator, acquires in the secondary market life insurance policies. With guidance from evaluations of the insureds' life expectancies performed by third-party independent professional estimators selected and approved by Plaintiffs and after consideration of other factors, LSC determines the price discount for the policies.  The discount from the policy's face value reflects a number of factors,

including but not limited to the insured's life expectancy and future premium payments required to maintain the policy. LSC then pays the premiums required to maintain the insurance policies. Policies acquired by LSC from approximately 2000 through 2002, were then placed with a special purpose vehicle, Life Receivables Trust ("LRT").

In acquiring life insurance policies, there is a risk that the insureds will live beyond their life expectancies, thereby requiring additional expenditures to maintain the policies and, thus, diminishing its return. To reduce this risk, the policies acquired during this timeframe were covered by contingency insurance policies ("CCI Policies") provided by Syndicate 102 of Lloyd's of London ("Syndicate 102"), who, in exchange for premium payments, agreed to pay the policy amount if the benefits are not received within an expected time.

### 2. Syndicate 102 and the Plaintiffs

Syndicate 102 is an underwriting agency for Lloyd's of London. Plaintiff Goshawk Dedicated, Ltd. is the current owner and sole member of Syndicate 102. Plaintiff Kite Dedicated, Ltd. was the owner and sole member of Syndicate 102 from approximately 2001 through 2003. Due to mismanagement, Lloyd's of London shut down Syndicate 102 to new business in October 2003 and placed it into run-off. *See Lloyd's Statement on Goshawk Syndicate*, dated October 31,

2003, a copy of which is attached as Exhibit "C."

Pursuant to the CCI Policies, Syndicate 102 unconditionally agreed that, in exchange for payment of premiums, should a covered policy not pay its benefits within the insured's life expectancy plus two years, Syndicate 102 would pay the net death benefit.

**B.    The LRT Arbitration**

In September 2005, LRT initiated an arbitration against Syndicate as a result of Syndicate's refusal to uphold its obligation to pay the benefit in connection with an insured, Cheng-Ching Wang (the "Wang Claims"), whose life insurance policy was covered under CR010054 ("Policy 54"), one of the CCI Policies issued by Syndicate 102.  Under Policy 54, LRT was entitled to payment from Syndicate of the policy death benefit.  LSC is not a party to the LRT Arbitration.

**C.    The Goshawk Arbitration**

In July 2006, Plaintiffs filed a separate arbitration against LSC in ICDR No. 50-195-T-00337-06 (the "Goshawk Arbitration").  Although LSC had used the independent medical evaluators selected and approved by Plaintiffs, including American Viatical Services (AVS), the party defendant in this lawsuit, the Plaintiffs' claim that the life expectancies relied upon LSC in acquiring the insurance policies were flawed.  As of this date, a panel has not been assigned.  In

addition, Plaintiffs have never sought discovery in that case.

**D.      The LRT Subpoena**

Instead of seeking discovery in the proper forum -- the Goshawk Arbitration -- where LSC can confront Plaintiffs' meritless allegations and have its day in Court, Plaintiffs have embarked on a strategy of serving LSC with successive, substantially identical subpoenas.  Plaintiffs currently have served more than *fifty-four (54)* separate requests, including subparts, between the LRT Arbitration and this case.[1]

In derogation of the provisions of the CCI Policies, Syndicate 102 caused the LRT Arbitration Panel ("Panel") to issue a subpoena *duces tecum* (the "LRT Arbitral Subpoena") directed to LSC for pre-hearing production of documents. The LRT Arbitral Subpoena itself is substantially duplicative of discovery served upon LRT, a party in the arbitration.  18 of the 25 categories of documents sought in the LRT Arbitral Subpoena were identical or substantially identical to the LRT Request.   Where not duplicative, the LRT Arbitral Subpoena was patently overbroad and expansive.   The LRT Arbitral Subpoena went well beyond the Wang Claims and purports to seek information wholly irrelevant to the LRT Arbitration.

---

[1]      This does not include the identical subpoena served in this case and issued by the Southern District of Florida where the documents are located.

LSC moved immediately to quash the Subpoena in the Southern District of New York, challenging the Panel's authority to issue the LRT Arbitral Subpoena. The court ultimately denied LSC's motion, which currently is on appeal. On July 31, 2007, after termination of a stay pending appeal, the Southern District of New York ordered LSC to produce documents subject to any ruling by the Panel on LSC's objections to the LRT Arbitral Subpoena by September 28, 2007. After the Panel declined to hear LSC's objections in derogation of its obligations under applicable law, LSC, at great expense and without waiver of its objections, produced *approximately 18,515 pages*.

**E.    The AVS Subpoena**

On or about July 26, 2007, Plaintiffs' counsel issued and served upon LSC in this case identical subpoenas -- (1) the instant Subpoena that is the subject of Plaintiffs' motion to enforce served in Georgia even though Plaintiffs' counsel was aware that the documents were located in Florida and (2) an identical subpoena issued in the Southern District of Florida.

A comparison of the LRT Arbitral Subpoena and the instant Subpoena plainly demonstrates the duplicative, overbroad and burdensome nature of the requests. Many of the requests are *identical*. For example, in Request No. 22, Plaintiffs seek:

*All LSC/Peachtree brochures, organizational charts, and all business cards (including but not limited to Craig M. Lessner, Jeffrey K. Nipp, Sergio Salani, Lori Wengatz, James Terlizzi, and Timothy Trankina) over the relevant period.*

While the relevance of this Request to any possible issue in the instant litigation between Plaintiffs and AVS strains credulity, this Request is even more burdensome and harassing given that it is identical to Request No. 23 of the LRT Arbitral Subpoena.

Similarly, in Request No. 18, Plaintiffs seek:

*All Documents and ESI concerning the policies or practices of LSC/Peachtree for the preservation and/or destruction of records.*

Again, while the relevance of LSC's document retention policies to the claims between Plaintiff and AVS is questionable, at best, the Request is truly abusive as it is identical to Request No. 13 of the LRT Arbitral Subpoena.

In Request No. 19, Plaintiffs seek:

*All Documents and ESI concerning the methodologies and/or factors that LSC/Peachtree used to calculate the purchase price for the life policies.*

While overbroad in that this Request is in no way limited to LSC's purchase of life policies for which AVS, as Plaintiffs' approved medical underwriter, provided medical evaluations, this Request is identical of Request No. 14 of the LRT Arbitral Subpoena. Request No. 16 of this Subpoena also is identical to

Request No. 8 of the LRT Arbitral Subpoena and Request No. 17 is identical to Request No. 9 of the LRT Arbitral Subpoena .

All told, at least five (5) requests in the instant Subpoena are identical to requests in the LRT Arbitral Subpoena and all twenty-four (24) requests are substantially identical or otherwise subsumed within the requests in the LRT Arbitral Subpoena.  A chart summarizing the duplicative nature of the suboenas is attached as Exhibit "D."

### III.   DISCUSSION

This Court should deny Plaintiffs motion to enforce the Subpoena pursuant to Rule 45(c) for the following reasons: (1) the Subpoena issued and served in Georgia seeks production of documents in Georgia that are maintained in LSC's offices in Boynton Beach, Florida; (2) the Subpoena is violative of the obligation imposed by Rule 45(c)(1) on a party and its counsel to avoid imposing undue burden or expense upon the responding party;(3) the Subpoena is identical or substantially identical to prior requests covered in the LRT Arbitral Subpoena for which LSC already has produced over 18,000 pages; (4) the Subpoena seeks information irrelevant to this matter; (5) compliance with the Subpoena would

impose an undue burden upon LSC; and (6) the Subpoena seeks production of LSC's confidential and trade secret information.[2]

## A.    Plaintiffs' Subpoena Improperly Purports to Require Production In This District Of Documents That Presently Are Located In LSC's Offices In Florida

At the outset, enforcement of the Subpoena issued by this Court should be denied because the documents sought are located in Florida.  It is well-settled that a Rule 45 subpoena cannot be issued for the production of documents located outside of the jurisdiction in which the subpoena is served.  *See Ariel v. Jones*, 693 F.2d 1058, 1061 (11th Cir. 1982) (affirming order quashing subpoena seeking production of documents in the Middle District of Florida on the basis that documents that were the subject of subpoena were not located within that district and holding that "[a] corporation may not realistically be considered fungible everywhere it does business.  Therefore, even positing that this court has personal jurisdiction . . ., it is unreasonable to assume that these appellants' local offices 'control' all documents kept at their respective corporate headquarters . . . In the absence of such control, therefore, even the existence of personal jurisdiction in this court is insufficient to create jurisdiction over the documents which are outside of this district."); *see also Gutescu v. Carey Int., Inc.*, 2003 WL 25589034,

---

[2]        LSC incorporates by reference all objections to the Subpoena at issue, a copy of which is attached hereto.

*2 (S.D. Fla. June 25, 2003) (holding that "[t]his Court does not have the power to issue a subpoena duces tecum to National Union, a non-party located in New York City, for the production of documents located in the Southern District of New York to a location within this District.").

Plaintiffs were aware that documents were located in Florida and, in fact, served upon LSC an identical subpoena issued by the Southern District of Florida. Following applicable law, Plaintiffs did not have authority to cause this Subpoena to be issued in this District to compel production of documents located in Florida. Accordingly, the motion to enforce must be denied.

**B.**     **Plaintiffs' Subpoena Violates the Obligation to Avoid Burden and Expense Imposed By Fed. R. Civ. P. 45**

While Federal Rule of Civil Procedure 45 allows a party to "issue a subpoena to compel a non-party to produce evidence independent of any deposition," paragraph (c)(1) of the Rule also imposes upon the party seeking production and its counsel an affirmative obligation to avoid imposing a burden or expense upon the respondent:

> A party or an attorney responsible for the issuance and service of a subpoena *shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena.* The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to lost earnings and a reasonable attorneys' fees.

(Emphasis added).

As a preliminary matter, the information requested in the Subpoena must fall within the permissible scope of discovery in general. *See, e.g.* Fed. R. Civ. P. 45(d) Advisory Committee's Note 1970 Amendment (stating that "the scope of discovery through a subpoena is the same as that applicable to . . . the other discovery rules"). This means that the documents requested in the Subpoena must be "relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1).

Ultimately, the Court's determination depends on one question - whether Plaintiffs' claimed need for this undeniably duplicative discovery overcomes the injury to LSC in being forced to comply with a Subpoena that requires the production of documents maintained in Florida in this District Georgia in response to overly broad and oppressive requests seeking irrelevant information beyond any reasonable relation to the case at bar. *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 40 (1st Cir. 2003) (stating that arguments relating to relevance, breadth of inquiry, undue burden and disclosure of trade secrets all address one central question – whether the requesting party's need for the information overcomes the non-party's rationale for resisting disclosure). *See also Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn.

2005). Plaintiffs have not, and cannot, establish such an overwhelming need because the information sought is duplicative of discovery in the LRT Arbitration and in many instances has absolutely nothing to do with the underlying litigation between Plaintiffs and AVS. Even if the information requested was somehow relevant (which LSC emphatically denies), no modification to the Subpoena could alleviate or overcome its defects and prevent the irreparable harm that LSC is certain to incur as a result of the being required to make a duplicative and unnecessary production.

## C.   Plaintiffs' Motion to Enforce Should Be Denied On  Grounds That It Duplicative And Seeks Irrelevant Information

### 1.   The Subpoena Is Duplicative Of  The  LRT Subpoena

As detailed above, the Subpoena that Plaintiffs issued and served in this case is in many respects completely identical to the LRT Arbitral Subpoena. Where it is not completely identical, the instant Subpoena is substantially identical or otherwise subsumed within the similarly broadly-worded requests in the LRT Arbitral Subpoena.

In their memorandum of law, Plaintiffs devote substantial space to misstatements regarding the proceedings with respect to the LRT Arbitral Subpoena. LSC disputes Plaintiffs' repeated mischaracterizations briefly below.

The LRT Arbitral Subpoena was served on or about December 28, 2006. LSC sought to quash the Subpoena in the Southern District of New York on two jurisdictional grounds: (1) that the Panel lacked the authority under the Federal Arbitration Act ("FAA") to disregard the express "pay first" provisions of Policy 54 which required Syndicate 102 to pay the death benefit before it could take any action; and (2) that the Panel lacked the authority to issue a pre-hearing subpoena for documents under Section 7 of the FAA. At the same time, LSC served timely objections to the LRT Arbitral Subpoena, objecting, as it has here, to, among other things, the overbreadth, vague and abusive nature of the subpoena. Those substantive objections were asserted to the LRT Arbitration Panel who was responsible for determining issues relating to the scope or propriety of the LRT Arbitral Subpoena. On March 12, 2007, the court for the Southern District of New York denied LSC's motion from which LSC took an appeal to the Second Circuit. LSC's appeal has not yet been decided. During the pendency of the appeal, LSC was granted a temporary stay from the Second Circuit which then was terminated on June 13, 2007.

Following termination of the temporary stay, LSC sought ruling from the LRT Arbitration Panel on its timely objections. To date, and in apparent contravention of applicable law, the LRT Arbitration Panel has never ruled upon

LSC's timely objections.  Nevertheless, on or about July 31, 2007, the district court in the Southern District of New York ordered LSC to produce all documents responsive to the LRT Arbitral Subpoena by September 28, 2007.  On September 28, 2007, after diligent search done at great expense, LSC completed a production of documents in response to the LRT Arbitral Subpoena consisting of 18,515 pages.

Although the LRT Arbitral Subpoena incorporates the provisions of Rule 45 requiring Syndicate 102, as the requesting party, to reasonably compensate LSC for the expense of production, neither Syndicate 102 or Plaintiffs have paid LSC anything for its expense in responding to the subpoena.  At bottom, despite Plaintiffs' misguided efforts to characterize the proceedings relating to the LRT Arbitral Subpoena, LSC has always complied with its obligations and court orders regarding same.

Notwithstanding LSC's compliance with the LRT Arbitral Subpoena, even if Plaintiffs take issue with LSC's production, nothing in Plaintiffs' motion to enforce or memorandum of law can be read to permit Plaintiffs to cause this Court to issue a substantially identical subpoena.  Plaintiffs do not and cannot cite to any provision in the Federal Rules of Civil Procedure or applicable federal case law that would permit them to have *another* court in *another* district hearing *another*

case issue *another* subpoena seeking the *same* documents merely because Plaintiffs were dissatisfied with LSC's compliance with respect to the first subpoena.

### 2. Plaintiffs' Subpoena Seeks Irrelevant Information

Discovery simply may not be had regarding a matter that is "not relevant to the subject matter in the pending action." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990). In addition to the duplicative nature of the Subpoena, time and again, Plaintiffs attempt to use this Court's subpoena power to require the production of information that has nothing at all to do with Plaintiffs' claims against AVS.

For example, in Request No. 2, Plaintiffs seek all communications between LSC and AVS regarding Mortality Experience in respect to LEs (life expectancies) provided by "another LE Evaluator." Inasmuch as the instant litigation concerns Plaintiffs' claims against AVS for allegedly providing inaccurate life expectancies, life expectancies performed by other LE Evaluators, as that term is defined in the Subpoena are of no consequence. In Request No. 9, Plaintiffs purport to require LSC to produce documents and ESI concerning communications with rating agencies or financial backers concerning AVS in any respect or "LE evaluations generally." Setting aside for the moment the obvious vagueness of Plaintiffs' request for communications regarding "LE evaluations generally," as phrased this

request is not in any way limited to life expectancies provided by AVS and, thus, exceeds any possible relation to any issue in this case. Request Nos. 11, 12, 13, 14, and 17 contain similar language requesting documents unrelated to AVS and, thus, are, similarly flawed. Here, in Request No. 20, Plaintiffs also purport to seek communications between LSC and AVS regarding the LRT Arbitration. Discussions regarding that separate litigation are irrelevant to Plaintiffs' so-called claims against AVS in this case.

**D.** **Plaintiffs' Subpoena Imposes An Undue And Oppressive Burden on LSC**

    **1.** **The Subpoena Seeks Production Of Identical Documents For A Second Time**

Even if the information sought by the Subpoena was not duplicative of the LRT Arbitral Subpoena for which LSC already has produced more than 18,000 pages and somehow could be deemed relevant to any issue pending in this case, "discovery is [still] not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Micro Motion,* 894 F.2d at 1323; *see also Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 521 (W.D. Tenn. 1999).

To evaluate the undue burden on LSC, the court must "weigh the burden to the subpoenaed party against the value of the information to the serving party." *Travelers Indemnity*, 228 F.R.D. at 113; *In re: Duque*, 134 B.R. 679, 683 (S.D. Fla. 1991). This involves a fact-specific balancing test depending on "such factors as relevance, the need of a party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Travelers Indemnity*, 228 F.R.D. at 113; *see also Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003). LSC's status as a non-party to the litigation is given special weight in this balancing of interests. *See Travelers Indemnity*, 228 F.R.D. at 113 ("courts also give special weight to the burden on non-parties of producing documents to parties involved in litigation"); *Allen*, 190 F.R.D. at 521 (" . . . courts have considered nonparty status as one factor when weighing the burdens that discovery may impose.").

As a non-party, LSC would suffer an oppressive burden if forced to comply with the Subpoena issued in this litigation. As discussed previously, the sweeping broadly-worded requests would require LSC, a non-party, and its employees *for a second time* to locate, sift through, sort, review and likely perform extensive redaction on all of the documents in its possession. Given this oppressive

and undue burden which would be imposed for a second time, Plaintiffs' motion to enforce should be denied.

### 2. Much Of The Information Sought Is Available From Other Sources

Where the information sought may just as easily be obtained from other sources, including AVS, as a party defendant, the Subpoena is unduly burdensome and must be quashed. *See Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (affirming the quashing of a subpoena where compliance would have required "extensive sifting and analysis" by the non-party's employees because the requesting party's need for the documents was not sufficient to outweigh the burden and invasion of corporate privacy that would have resulted to the non-parties to the action); *see Travelers Indem. Co.*, 228 F.R.D. at 113 (quashing a subpoena as unduly burdensome where it called for the review of all the non-party's documents associated with over 1,000 insurance policies kept in hundreds of boxes stored in numerous offices and warehouses in several states and the documents were obtainable from the public record or from a party to the litigation); *Carl Zeiss Stiftung v. Zeiss*, 40 F.R.D. 318, 238 (D.D.C. 1966) ("Necessity for production is sharply reduced where an available alternative for obtaining the desired evidence has not been explored"), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967).

Absent a demonstrated inability to obtain that information from AVS, a party in this case, Plaintiffs cannot even begin to request it from LSC. *Travelers Indemnity Co.*, 228 F.R.D. at 113; *Premium Service*, 511 F.2d at 229; *Carl Zeiss,* 40 F.R.D. at 238. Accordingly, the enforcement of the Subpoena should be denied.

**E.      Plaintiffs' Subpoena Seeks LSC's Trade Secrets and Other Confidential Commercial Information**

It is considered oppressive and unreasonable to require a non-party to disclose private and confidential business information. *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969) (recognizing the right to privacy and the right to keep financial affairs as confidential and holding that it is oppressive or unreasonable to require a non-party to disclose such information). This potential loss of LSC's corporate privacy far outweighs any purported need for the information on Plaintiffs' part. *See also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (quashing a subpoena issued by the Government to a non-party hospital seeking information regarding some of the hospital's doctors on the grounds that the "balance of harms resulting from disclosure severely out-weighs the loss to the government through non-disclosure"); *Travelers Indem.*, 228 F.R.D. at 113; *Hecht,* 46 F.R.D. at 607.

Compliance with the Subpoena would violate LSC's corporate privacy through the disclosure of Peachtree Life's internal business and financial

information, analysis and strategy. Request No. 19, for example, seeking production of:

> *All documents and ESI concerning the methodologies and/or factors that LSC/Peachtree used to calculate the purchase price for life policies.*

First and foremost, as with many of the requests, this Request is in no way limited to life insurance policies for which AVS supplied medical evaluations. Second, this Request is not limited to the medical evaluations at all, but seeks all information regarding how LSC determines its purchase price for any life insurance policy it acquired, whether or not AVS was involved. The medical evaluations are but one factor used by LSC in calculating its purchase price. These other factors are of no relevance whatsoever to Plaintiffs' claims. In fact, what LSC paid for the life insurance policies is of no apparent relevance to Plaintiffs' claims against AVS. What this Request does is seek to force LSC to divulge its pricing model, which is LSC's confidential trade secret and business information. In light of the obvious irrelevance, this invasion of LSC's business information should be denied.

Moreover, compliance with the Subpoena would also invade the privacy of each and every one of LSC's customers by disclosing, among other things, each customer's: (i) name, (ii) projected life expectancy based on his/her overall health

and medical condition, (iii) health and medical condition, (iv) estate planning activities, and (v) personal financial information. As Appendix A to the Subpoena, Plaintiffs identify one hundred forty-five (145) named insureds for whom they now seek disclosure by LSC of confidential personal, medical and financial information. Much of this information may be protected by Health Information Portability and Accountability Act of 1996 (HIPAA) and, even if not, much of this information is wholly irrelevant to Plaintiffs' claims against AVS. Accordingly, Plaintiffs' motion to enforce the Subpoena should be denied.

**F.** **Even If the Court Orders LSC to Produce Documents in Response to Some Portions of the Subpoena, Any Production Should Be Conditioned Upon Plaintiffs' Payment In Advance For All Costs Associated With Any Production of Documents and ESI**

As set forth above, LSC disputes that Plaintiffs are entitled to require LSC to respond to nearly-identical requests for production a second time. In the event, however, that this Court orders LSC to produce documents in response to some portions of the Subpoena, under Rule 45(c) it may require Plaintiffs to compensate LSC for all costs associated with the production. Notably, this Court has already required Plaintiffs to pay for the costs of production of another non-party in this case. By Order dated June 15, 2007, this Court already has ordered that Plaintiffs pay the costs of production associated with a subpoena served upon another provider, Portsmouth Settlement Company I, Inc.

Rule 45(c)(2)(B), as amended in 1991, requires that an order to compel production of documents pursuant to a subpoena "*shall* protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing or sampling commanded." (emphasis added). Fed. R. Civ. P. 45(c)(2)(B). "The mandatory language of this Rule represents a clear change from old Rule 45(b), which gave district courts *discretion* to condition the enforcement of subpoenas on the petitioner's paying for the costs of production." *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (original emphasis); *accord, Tutor-Saliba Corp. v. U.S.*, 32 Fed.Cl. 609, 611-12 (Fed. Cl.) ("the new rule expressly provides that, when a court orders a nonparty to comply with a subpoena, it must protect the nonparty from significant expense; previously, this action was merely discretionary"), *appeal dismissed,* 52 F.3d 343 (Fed. Cir. 1995). Under the rule now in effect, non-parties are entitled not only to their direct production costs, but also to their legal fees, "where the work benefits the requesting party." *In re First Am. Corp. (First American)*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998); *accord, e.g., Kahn v. General Motors Corp.*, 1992 WL 208286, *2 (S.D.N.Y. Aug. 14, 1992). Indeed, there is a strong presumption that non-parties should be fully recompensed for being compelled to comply with a discovery subpoena:

> Rule 45's mandatory cost-shifting provisions promote the most
> efficient use of resources in the discovery process. When nonparties
> are forced to pay the costs of discovery, the requesting party has no
> incentive to deter it from engaging in fishing expeditions for
> marginally relevant material. Requestors forced to internalize the
> costs of discovery will be more inclined to make narrowly tailored
> requests reflecting a reasonable balance between the likely relevance
> of the evidence that will be discovered and the costs of compliance.

*Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 322-23 (D.D.C. 1998). The need

for cost-shifting is heightened where, as here, the proponent of the Subpoena seeks

ESI. *See Opentv v. Liberate Technologies*, 219 F.R.D. 474 (N.D. Cal. 2003)(in

order to determine whether cost-shifting is appropriate for discovery of electronic

data, factors that should be considered are: (1) the extent to which the request is

specifically tailored to discover relevant information; (2) the availability of such

information from other sources; (3) the total cost of production, compared to the

amount in controversy; (4) the total cost of production, compared to the resources

available to each party; (5) the importance of the issues at stake; and (6) the

relative benefits to the parties of obtaining the information); *Guychemical

Company, Inc. v. Romaco AG*, 243 F.R.D. 310 (N.D. Ind. 2007).

To date, Plaintiffs have not paid anything towards LSC's prior production in

response to the nearly-identical LRT Arbitral Subpoena. To the extent that this

Court were to determine that Plaintiffs are entitled to *any* production, such

production should be conditioned upon Plaintiffs' payment in advance of all costs

in obtaining documents and ESI that are responsive to the Subpoena.

## V. <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiffs' motion to enforce. **WHEREFORE**, Non-Party LIFE SETTLEMENT CORPORATION d/b/a PEACHTREE LIFE SETTLEMENTS respectfully requests that this Court enter an order denying the motion to enforce subpoena filed by Plaintiffs GOSHAWK DEDICATED, LTD. and KITE DEDICATED, LTD., and for such other relief as this Court deems just and appropriate.

Respectfully submitted October 10, 2007.

 /s David W. Long-Daniels
David W. Long-Daniels
Georgia Bar No. 141916

GREENBERG TRAURIG, LLP
The Forum
3290 Northside Parkway
Suite 400
Telephone:  (678) 553-4744
Facsimile: (678) 553-2212


--and--


Jesús E. Cuza
Florida Bar No. 428991
Craig Barnett
Florida Bar No. 0035548

GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301
Telephone:  (954) 765-0500
Telefax:  (954) 765-1477


*Attorneys for Life Settlement
Corporation d/b/a Peachtree Life
Settlements*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 10, 2007, I electronically filed **NON-PARTY LIFE SETTLEMENT CORPORATION D/B/A PEACHTREE LIFE SETTLEMENTS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO ENFORCE SUBPOENA AND COMPEL PRODUCTION FILED BY PLAINTIFFS GOSHAWK DEDICATED, LTD. AND KITE DEDICATED, LTD.** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

    John H. Fleming, Esq.
    Jennifer M. Rubin, Esq.
    Rebecca F. Wasserman, Esq.
    Sutherland Asbill & Brennan
    999 Peachtree Street, N.E.
    Atlanta, Georgia 30309-3996
    Email: john.fleming@sablaw.com
    Email: jennifer.rubin@sablaw.com
    Email: rebecca.wasserman@sablaw.com

    Michael J. Levin, Esq.
    R. Steven Anderson, Esq.
    Raenu Barod, Esq.
    Alysa B. Wakin, Esq.
    Barger & Wolen, LLP
    10 E. 40th Street, 40th Floor
    New York, New York 10106
    Email: mlevin@barwol.com
    Email: rbarod@barwol.com
    Email: sanderson@barwol.com
    Email: awakin@barwol.com

    Edwin A. Oster, Esq.
    Barger & Wolen, LLP
    19800 MacArthur Boulevard, 8th Floor
    Irvine, California 92612
    Email: eoster@barwol.com

Richard B. Hopkins, Esq.
Stephen C. Klein, Esq.
Barger & Wolen, LLP
633 West Fifth Street, 47th Floor
Los Angeles, California 90074
Email: rhopkins@barwol.com
Email: sklein@barwol.com

John C. Stivarius, Jr.
Teresa B. Stivarius
415 Prestwick Court
Alpharetta, Georgia 30005
Email: jstivarius@comcast.net
Email: teresa.butler@comcast.net

William J. Sheppard
Morris, Manning & Martin LLP
1600 Atlanta Financial Road, N.E.
Atlanta, Georgia 30325
wjs@mmmlaw.com

                                                   __/s David W. Long-Daniels____
                                                     DAVID W. LONG-DANIELS
                                                     Georgia Bar No. 141916

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1B

I hereby certify that the foregoing Memorandum of Law has been prepared using Times New Roman Font (14 Point).

_____/s David W. Long-Daniels___
DAVID W. LONG-DANIELS
Georgia Bar No. 141916