## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **GOSHAWK DEDICATED Ltd., et al,** ) | |
| ) | |
| **Plaintiffs,** ) | **CIVIL ACTION NO.** |
| ) | **1:05-CV-2343-RWS** |
| **v.** ) | |
| ) | |
| **AMERICAN VIATICAL SERVICES, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

### Special Master Report and Recommendation No. 10

Under the July 23, 2008 order, the Court established general ground rules to govern compliance with the Goshawk subpoena duces tecum to LSC. Of immediate relevance here is the requirement that Goshawk make certain pre-payments into the Registry of the Court before LSC is obligated to deliver the electronically stored information (ESI) that is the primary target of the subpoena. The operative language requires LSC to provide an initial **estimate** of the cost of the production.

> The cost shall **only** estimate the direct cost of gathering, copying and transferring the documents to Plaintiff's (i.e., the Trialgraffix (sic) cost), and **shall not include attorney's fees** or other costs not typically associated with the act of gathering, copying, and transferring documents.

1

Based on the LSC **estimate**, Goshawk must deposit funds into the registry of the Court sufficient to cover the anticipated costs of producing "all Documents under this Order." After all document production is complete, the Court then is to consider **actual costs** of compliance and determine how much to reimburse LSC.

In a June 25, 2010 letter, LSC revealed that there were 24,309 non-privileged documents that are responsive to the Goshawk subpoena and ready for delivery.[1] These documents have been drawn from what have been labeled as LSC's "2007 backup tapes." The existence of these tapes first came to light during a required "meet and confer" session between attorneys for the parties in August of 2009.[2] This belated revelation[3] eventually led to Report and Recommendation No. 7 ("R&R 7")[Document 506], which the Court approved on January 14, 2010. [Document 508] LSC retained Index Engines to search the 2007 backup tapes using key words proposed by Goshawk and approved by the Special Master. Goshawk deposited $39,975 into the Registry of the Court to cover these services

---

[1] At this juncture, well after compliance with Report and Recommendation No. 7 should have been completed, LSC advised it was still not prepared to complete production of the ESI. LSC "continues to review the results of the searches performed by Index Engines of the email folders of certain present and/or former employees.... As indicated at the conclusion of this Report and Recommendation, that review must be brought to a close.

[2] Report and Recommendation No. 5 [Document 502], approved by the Court on August 6, 2009. [Document 504]

[3] The Goshawk subpoena was issued on July 26, 2007. The record does not reflect precisely when LSC created the 2007 backup tapes but it could not have been too much before or too much after the date Goshawk served its subpoena on LSC. In any event, the use of the 2007 backup tapes has substantially reduced the direct cost of the ESI search process ($39,975 to date) and similarly reduced the disruption of LSC's day to day business activities. See Non-Party Life Settlement Corporation's Notice of Compliance with Court Order Dated July 23, 2008, Exhibits A, B and C. [Documents 424, 424-1 to -3]

and payment to Index Engines has been made.[4]  Neither party disputes that pre-payment of anticipated outside vendor costs is required under the July 23, 2008 and R&R 7.

The immediate question is the transfer of the 24,309 documents.  Pursuant to its letter of July 6, 2010, LSC demands the **pre-payment** of an additional $359,574.30 into the Registry of the Court as a precondition to delivery of these documents to Goshawk.[5]  The entire demand is for legal services provided to LSC between July 25, 2008 and July 1, 2010.  Analysis of this issue starts with the July 23, 2008 order.  It specifically delineates the subpoena compliance activity for which Goshawk must make **pre-payment**.  This requirement applies only to "the **direct cost** of gathering, copying and transferring the documents to Plaintiffs…."  The order refers to "the Trialgraffix (sic) cost" as an example of a **direct cost**.  TrialGraphix was one of three **outside or third party vendors** that submitted estimates in April 2008 for the "hosting and production of ESI" responsive to the Goshawk subpoena.[6]  While the order does not give other examples of **direct**

---

[4] This payment – like other reimbursements for outside vendor services – was authorized by the Special Master based on work completed.  Payment was not deferred until LSC had fully complied with the Goshawk subpoena. LSC has not opposed these payments although they are arguably "piecemeal" in timing.

[5] In a June 25, 2010 letter to the Special Master, LSC indicated that its attorney's fees "exceed[ed] $520,000," a figure that included an estimate of the cost of work performed by LSC's in house attorneys. LSC subsequently indicated that it would expect Goshawk to deposit additional funds to cover the $520,000 amount and possibly more, which would include the services of both outside and in-house attorneys. Cuza letter to Special Master, July 6, 2010, at 10.

[6] C. Barnett letter to J. Fleming, March 26, 2008. [Document 392-2 at 3-39]

**costs,** it does make clear that one cost category is not subject to the **pre-payment** requirement. That category is "attorney's fees."

LSC is preoccupied with the attorney's fee issue, apparently fearing that the July 23 order forecloses their recovery as a subpoena compliance cost under Rule 45 of the Federal Rules of Civil Procedure ("Rule 45"). Anxiety over this question prompted LSC to appeal the July 23, 2008 order to the Eleventh Circuit.[7] LSC's concerns are unwarranted. In practical effect, the order obliges LSC to litigate its entitlement to attorney's fee without the rare advantage of having funds **pre-paid** into the Registry of the Court to ease the risk of non-collection. While LSC might not like the line that the Court has drawn, it cannot persuasively argue that the line is an unreasonable one, particularly given Goshawk's apparent financial ability to pay any attorney's fees demand currently under consideration.

Despite regularly reminding the Special Master that he has no power to expand or alter the July 23, 2008 order,[8] LSC insists that R&R 7 did just that. LSC is incorrect. As previously mentioned, far from modifying the July 23 order, footnote eight of R&R 7 specifically refers to language excluding "attorney's fees" from the **pre-payment** requirement. Analytically, that resolves the immediate

---

[7] In an appellate brief before the Eleventh Circuit, LSC acknowledged that the July 23, 2008 order does not include attorney's fees within the scope of its deposit or pre-payment requirement. Anderson letter to Special Master, August 5, 2010, Exhibit 12.

[8] "Your appointment as Special Master expressly denies you the authority to 'expand the parties' obligations or to alter the cost-shifting provisions under the July 23, 2008 order.' You have no discretion here." Cuza letter to Special Master, July 6, 2010, at 2.

question whether Goshawk must make any additional **pre-payments** before LSC can be directed to deliver the 24,309 responsive documents.

Additional comment about R&R 7 is appropriate here. R&R 7 makes two references to attorney's fee estimates. Both are in the context of compliance with its procedures and timetable. The first reference occurs in paragraph 18 which requires LSC to "provide a detailed estimate of the anticipated time and cost for the **privilege review**." Recognizing that LSC has consistently claimed the right to be reimbursed for attorney's fees incurred in complying with the Goshawk subpoena, footnote seven directs LSC to organize the privilege review estimate according to specific cost categories: "collecting, indexing, reviewing and producing ESI." Footnote seven also directs LSC to provide "separate estimates of attorney **time** for in-house and outside counsel." The object is to give Goshawk meaningful notice of its potential exposure to cost reimbursement under Rule 45 independent of whether any specific cost category was subject to the **pre-payment** requirement.[9] It was anticipated since this estimate would be based on a known universe of presumptively responsive ESI, it would be more realistic and precise

---

[9] Bear in mind here that Index Engines was doing the collecting and indexing of the ESI from the 2007 backup tapes under R&R 7. Goshawk deposited $39.975 into the Registry of the Court for this work and Index Engines has been paid. [Document 542]

than those provided in April and August of 2008.[10]  This LSC estimate was due on

or before Day 49 or March 4, 2010. R&R 7, ¶ 18.  LSC never provided it.

 After receipt of this estimate, the Special Master was next supposed to

confer with the parties "to determine the reasonableness of LSC's time and cost

estimate" and "to establish a **supplemental timetable** for completion of (a) LSC's

privilege review and (b) the production of non-privileged, responsive ESI in native

format with metadata intact." R&R 7, ¶ 19.  This conference was scheduled for

Day 56 or March 11, 2010. R&R 7, ¶ 19.  It also did not occur.  LSC acknowledges

that it has culled out many arguably privileged documents.  This process transpired

outside the framework of the supplemental timetable contemplated in paragraph 19

of R&R 7.[11]  LSC still has not produced a privilege log despite specific language in

paragraph 20 of R&R 7 requiring one.  Even if **pre-payment** of attorney's fees

were authorized for privilege review under R&R 7, which is not the case, LSC

forfeited that right by failing to comply with paragraphs 18, 19 and 20 of R&R 7.

---

[10] See C. Barnett letter to J. Fleming, March 26, 2008. [Document 392-2 at 35-39] and Non-Party Life Settlement Corporation's Notice of Compliance with Court Order Dated July 23, 2008, Exhibits A, B and C. [Documents 424 and, 424-1 to -3]. The range of LSC's estimates for outside vendor e-discovery services is hefty by any measure. For example, in the Notice of Compliance with the July 23 order, the range for Kroll OnTrack was $425,925 to $2,105,750 depending on how quickly the production had to be made. Apparently, this estimate did not include attorney's fees. Somewhat surprisingly, LSC claims that "[t]his simple process would have required only minimal involvement of attorneys, and thus no substantial costs other than Kroll's fees – which Goshawk has been ordered to bear." Cuza letter to Special Master, July 6, 2010, at 6. Here it should be noted that when the cost of Index Engine's services is added to the two years of attorney's fees now claimed for LSC's outside counsel, the total cost is approximately $400,000, which is still less than Kroll's lowest August 2008 estimate without attorney's fees.
[11] Barnett letter to Special Master, June 25, 2010. The terms used to cull out privileged documents were also disclosed in Exhibit C to this letter.

The second reference to attorney's fees appears in paragraph 21 of R&R 7. It contemplates that prior to the delivery of the ESI to Goshawk, invoices would be submitted reflecting all outstanding charges for which LSC would be seeking reimbursement under Rule 45. One of the three cost categories was "attorneys' fees for collecting, indexing, reviewing and producing ESI responsive to the Goshawk subpoena." R&R 7, ¶ 21. Footnote eight was strategically placed next to the phrase "attorneys' fees" to remind the parties about language in the July 23 order "**limiting the award of attorney's fees** for compliance with the Goshawk subpoena." R&R 7, ¶ 21. While that sentence could have been worded with greater precision, footnote eight's cautionary message continues, "LSC should **nevertheless** submit a request for all attorneys' fees believed to be reimbursable under Federal Rule of Civil Procedure 45." R&R 7, ¶ 21. As in the case of the paragraph 18 cost estimate for privilege review, the purpose was notice. Before taking delivery of the ESI, Goshawk would be fully aware of the scale of LSC's potential reimbursement claims under Rule 45.

The third sentence in paragraph 21 of R&R 7 provides:

> Unless the Special Master directs otherwise because he finds the estimate to be unreasonably high, Goshawk shall deposit into the Court Registry the amount provided in the LSC estimate.

Standing alone, this sentence might be read to mean that the aggregate LSC cost estimate, including attorney's fees, would be subject to **pre-payment** under R&R

7

7. That is certainly LSC's interpretation. This interpretation loses its plausibility,
however, once it is considered in light of the attorney's fees caveat in footnote 8
(which appears on the **same page**) and the specific exclusion of attorney's fees
from the **pre-payment** requirement in the Court's July 23, 2008 order. The bottom
line is that Goshawk will not be required to make pre-payment of any attorney's
fees as a precondition to the delivery of ESI responsive to its subpoena. This
Report and Recommendation is made without prejudice to LSC's right to seek
reimbursement of attorney's fees under Rule 45 after full compliance with the
Goshawk subpoena.

Unless otherwise stated, the following actions shall be taken **no later than
ten (10) days** following the Court's approval of this Report and Recommendation:

1. LSC shall transfer the 24,309 non-privileged documents identified in LSC's
   June 25, 2010 letter as responsive to the Goshawk subpoena. This ESI
   transfer shall be effectuated in a form and manner specified by Goshawk.

2. LSC shall transfer all additional non-privileged documents referenced in
   LSC's June 25, 2010 letter relating to "the email folders of certain identified
   present and/or former employees for whom LSC has electronic files, which
   were contained on Microsoft Exchange servers that were backed up on the
   2007 backup tapes." This ESI transfer shall be effectuated in a form and
   manner specified by Goshawk.

3. LSC shall provide a log of all documents withheld based on a claim of privilege. This log shall be delivered to Goshawk and to the Special Master in hard copy format and in Word or some other computer searchable format.

4. LSC shall provide the Special Master with a set of all documents withheld based on a claim of privilege. These documents shall be delivered to the Special Master in hard copy format and in Word or some other computer searchable format.

5. LSC shall confirm that the lists of filter terms used by LSC to exclude documents as non-responsive or as privileged are complete (Barnett letter of June 25, 2010, Exhibits B and C); if not complete, LSC shall provide supplemental lists to Goshawk and to the Special Master that are current and complete.

6. LSC shall provide to counsel for Goshawk a copy of the time and billing records of its outside counsel. These records were attached as Exhibit C to the Cuza letter to the Special Master dated July 6, 2010. Delivery of this document is subject to the conditions set forth in footnote one of the Cuza letter, which counsel for Goshawk have accepted. [Letter from R. Barod to Special Master on July 16, 2010] Note that LSC's demand for the time and billing records of Goshawk's outside counsel for the same time period – July 25, 2008 to July 1, 2010 – is denied.

So ordered, this 4 of October, 2010.

Albert M. Pearson, III
Special Master