# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

GOSHAWK DEDICATED LTD.,      :
*et al.*,                    :
                             :
    Plaintiffs,      :
                             :      CIVIL ACTION NO.
v.                           :      1:05-CV-2343-RWS
                             :
AMERICAN VIATICAL            :
SERVICES, LLC,               :
                             :
    Defendant.       :

## ORDER

This case comes before the Court on Plaintiffs' Motion to Strike Jury

Demand [659], Defendant's Motion for Trial [676], Plaintiffs' Motion to Strike

Expert Report by Defendant's Expert R. Larry Warnock [663], and Defendant's

Motion for Summary Judgment [664].  After reviewing the record, the Court

enters the following Order.

### Background

This matter arises in the context of a secondary market for life insurance

policies that enables three categories of policyholders to sell their policies to

viatical companies (where the insureds are diagnosed with AIDS) or life

settlement providers (where the insureds are of advanced age and/or suffer from chronic or terminal illness).[1] A settlement provider that purchases a life insurance policy in this context is entitled to receive the death benefits payable under the policy upon the insured's death, provided that the settlement provider has met all of its obligations under the policy. Settlement providers in this market insure themselves against catastrophic losses arising from insureds far outliving their life expectancies ("LEs"), which causes unanticipated premium costs and a delay in payment of death benefits. This insurance is known as Cost Contingency Insurance or CCI.

On October 24, 1994, Phil Loy and Dr. Thomas Hodge founded American Viatical Services ("AVS") to provide LE evaluations for the CCI industry. Between 1994 and 1998, the primary business of AVS was preparing LEs for life insureds who where HIV positive or had developed AIDS. LEs for AIDS patients and terminally ill persons were calculated using available scientific and statistical information regarding the diseases and treatments (as opposed to a traditional life insurance actuarial analysis that relies on sample

---

[1] Unless otherwise noted, the facts are taken from Defendant's Numbered Statement of Material Facts which Defendant Contends There is No Genuine Issue to Be Tried ("Def.'s SMF") [665].

data concerning the general population). AVS's criteria for AIDS and terminal illness LE evaluations was updated as medications changed and the understanding of diseases improved. AVS's LE evaluations required the application of individual judgment (i.e., it was not an exact science). AVS prepared LEs as date ranges (e.g., 12 to 14 months) until a client, Portsmouth, contacted AVS in 1998 or 1999 and asked that AVS start setting LEs as a single number.

Around 1997, AVS was introduced to the debit-credit model of LE evaluation by CIGNA Re, a division of CIGNA Insurance Company. Under this model, a debit is created for an impairment and a credit is created for something that positively impacts the insured's life span (e.g., history of parents who live to age 95). These debits and credits are taken from insurance underwriting manuals. Underwriting manuals vary, with some being more conservative and others more aggressive. AVS moved fully to the debit-credit model in 1999 and adopted an underwriting manual from Cologne Re. Debit-credit models are continually changing as medical improvements occur.

Plaintiffs ("Goshawk") were members of the Lloyd's of London insurance market and issued CCI to companies in the viatical and life settlement

industry. Goshawk's connection to AVS began in 1997 when Loy met Steve Mitchell and Martin Searle (employed by First City Insurance Brokers and then Gracechurch Underwriting, Ltd. of England). After their initial meeting, Loy and Searle communicated about AVS's LE evaluations on HIV and AIDS insureds and potential LE evaluations on seniors.

On December 9, 1998, Loy met with Searle, Paul Toomey (eventually the Chief Underwriting Officer and Active Underwriter for Goshawk's CCI business), Brian Freeman (a Lloyd's of London broker) and Geoff Walden (a Goshawk underwriter). At the meeting, Loy gave a presentation about AVS. Loy noted that AIDS was a rapidly evolving area of medicine. Loy also noted that it was difficult for AVS to track the accuracy of LEs. Loy stated that AVS used its own objective, independent judgment to calculate the appropriate LE in the case of each life insured, without being influenced by settlement providers, brokers or others who had economic interests in CCI policies. (Plaintiffs' Rule 56.1 Statement of Additional Facts ("Pl.s' SAF"), Dkt. [723-2] ¶¶ 3, 6.) Loy's declarations regarding AVS's independence factored heavily into Toomey's decision to proceed with AVS and with CCI business generally. (Id. ¶ 3.)

AO 72A
(Rev.8/82)

At the December 9, 1998 meeting, Loy stated that AVS produced LEs at an 85% confidence level.[2] (Id. ¶ 7.)  Loy also stated that AVS had three doctors on staff who were instrumental in preparing AVS's LE evaluations, and that AVS adhered to professional standards to ensure that its LE evaluations were accurate.  (Id. ¶¶ 9-10.)  Following the meeting, Goshawk designated AVS as a Qualified Consulting Physician that could be utilized by settlement providers for LE evaluations.  Goshawk began issuing CCI policies in January 1999 (beginning with the Portsmouth portfolio).  AVS provided more than 80% of the LEs in the portfolios insured by Goshawk CCI.

In subsequent meetings with Toomey, Loy made representations regarding AVS's practices and independence consistent with those he made during the December 9, 1998 meeting.  (Id. ¶¶ 12-13.)  For example, at a meeting in April 2000 with Merlin Underwriting Agency Ltd., Loy confirmed that AVS was utilizing a methodology that would meet the requirements of Goshawk Underwriters.  (Id. ¶ 20.)  Then, around April 2002, Loy represented to an agent of Goshawk Underwriters that AVS was fully cognizant of the need

_____

[2] As discussed in more detail below, the parties now dispute what Loy meant by "85% confidence level"at the time the representations were made.

for LE evaluations to meet an 85% confidence level, and that AVS was making LE evaluations to meet that requirement. (Id. ¶ 21.)

Meanwhile, in early 2001, Goshawk's Portsmouth portfolio suffered more than $14 million in losses. Despite this poor performance, Goshawk continued to rely on AVS's LE evaluations in its CCI business. Loy told Goshawk during meetings in March 2001 that AVS's under-projection of LEs in the Portsmouth portfolio was due to advances in AIDS treatments. (Id. ¶¶ 30-31.) Toomey testified that he was not aware of Goshawk undertaking any analysis of how well the LE evaluators (including AVS) were performing after the 2001 Portsmouth losses. He further testified that he could not recall any outside auditor brought in by Goshawk to assess life evaluators during the time Goshawk was in the CCI business. Goshawk ceased underwriting CCI business by March 2003 and was placed into run-off by Lloyd's of London in October 2004 (the run-off was not attributable to Goshawk's CCI business). Goshawk's amended complaint [580] asserts three types of fraud against AVS – actual intentional misrepresentation, false statement without knowledge of truth or falsity, and promise made without intent to perform. Underlying these fraud claims are the statements made by Loy to Goshawk at the December 9, 1998

6

meeting, and similar, consistent statements made by Loy in subsequent communications with Goshawk. Specifically, Goshawk alleges that Loy made five material misrepresentations: (1) that AVS adhered to professional standards in setting its LEs, (2) that AVS independently set its LEs, (3) that AVS's methodology yielded LEs at an 85% confidence level, (4) that AVS was conservative in its LE evaluations, and (5) that AVS employed substantial medical resources to reach its LE evaluations. (Amended Complaint, Dkt. [580] ¶¶ 20-27.)

Goshawk claims that AVS was setting unreasonably low LEs to benefit its customers like Portsmouth (to the detriment of Goshawk), and was not basing its LE evaluations on professional, independent information. (Id. ¶¶ 99-118.). Goshawk alleges that AVS lowered LEs at the request of Portsmouth, backdated the new LE data so it appeared to pre-date Portsmouth's contract with Goshawk, and then destroyed the original documents. (Id. ¶ 62.). AVS denies Goshawk's allegations, asserting that AVS's LEs were the product of independent, professional evaluations, not fraud by AVS.

AO 72A
(Rev.8/82)

**Discussion**

**I.     Motion to Strike Defendant's Expert Report**

Goshawk moves to strike AVS's expert report by R. Larry Warnock on grounds that it is untimely under this Court's Scheduling Order and Federal Rule of Civil Procedure ("Rule") 26(a)(2)(B).   (Plaintiffs' Motion to Strike Expert Report by Defendant's Expert R. Larry Warnock ("Pl.s' Mot. to Strike"), Dkt. [663].)  This Court ordered the parties to submit expert reports by July 2, 2007.  (Order Granting Extension of Time to Complete Discovery, Dkt. [220].)  Rebuttal expert disclosures were due on August 1, 2007.  (Id.)  AVS did not submit an expert report by the deadline; instead, it submitted only a rebuttal report by R. Larry Warnock on August 1, 2007.  Pursuant to a November 22, 2011 Consent Scheduling Order [598], the parties were permitted to submit supplemental expert reports by May 16, 2012.  AVS submitted a report by Warnock labeled "supplemental." [663-5].

Goshawk alleges that Warnock's 2012 report is not a supplement to Warnock's 2007 rebuttal report, but rather a brand new report and analysis. (Pl.s' Mot. to Strike, Dkt. [663-1] at 3-4.)  In fact, in his own deposition, Warnock stated that his 2012 report "was new work" and "deals completely

with new information." (Deposition of Robert Larry Warnock, Dkt. [663-6]

98:8-99:10.) Goshawk argues that there is no reason why Warnock's analysis

could not have been performed by the 2007 deadline, and AVS's late disclosure

of the new analysis is unfair and prejudicial to Goshawk. (Pl.s' Mot. to Strike,

Dkt. [663-1] at 5-7.)

Rule 26(a)(2)(B) requires that expert reports contain "a complete

statement of all opinions the witness will express and the basis and reasons for

them." Under Rule 26(e), a party who has made a disclosure under 26(a) must

supplement or correct its disclosure or response "in a timely manner if the party

learns that in some material respect the disclosure . . . is incomplete or

incorrect." If a party fails to provide information required by Rule 26(a) or (e),

"the party is not allowed to use that information or witness to supply evidence

on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"The purpose of expert reports and a deadline for serving them is to put

an opposing party on notice of what it must contend with at trial." Cochran v.

Brinkmann Corp., 2009 U.S. Dist. LEXIS 114895, at *14 (N.D. Ga. Dec. 9,

2009.) Rule 26(e) "is not a device to allow a party's expert to engage in

additional work, or to annul opinions or offer new ones to perfect a litigating strategy." Id. at 15. Further, "Rule 26 does not permit a party to circumvent the deadlines imposed by the Court." Id. at 19.

Warnock's 2012 report contains a new analysis of AVS's LEs. The introduction to the 2012 report states, "In May 2012 [Warnock's company] was requested to develop an independent analysis of AVS's underwriting results and to prepare a Supplemental Report related to such analysis." (Expert Witness Supplemental Report, Dkt. [663-5].) Whereas Warnock's 2007 rebuttal report "focused on review of the plaintiff's [sic] experts, analysis of certain data on cases underwritten by AVS and insured by the plaintiffs, and review of certain other data for familiarity," the 2012 report provides an "actual-to-expected" analysis based on actual mortality data through 2011. (See Expert Witness Report, Dkt. [663-3]; Expert Witness Supplemental Report, Dkt. [663-5].)

Goshawk argues that Warnock could have conducted an independent analysis of AVS's LEs (as Goshawk's own expert did) in 2007, and certainly before May 2012, especially given that the last LEs relevant to this matter were issued by AVS in March 2003. Furthermore, Goshawk argues, the late disclosure of Warnock's new analysis was not harmless because "Goshawk had

no opportunity to respond to and develop document and interrogatory discovery directed at the facts underlying the new issues raised in the 2012 report." (Pl.s' Mot. to Strike, Dkt. [663-1] at 13.) AVS responds that Warnock could not have done the analysis earlier because deaths of insureds continued between 2007 and 2012, and argues that the 2012 report merely expands upon and provides more support for the root opinion in the 2007 report – that AVS's LEs were reasonable. (See generally, Defendant American Viatical Services, LLC's Opposition to Plaintiff's Motion to Strike ("Def.'s Opp. Br."), Dkt. [677].)

The Court agrees with Goshawk. Warnock's 2012 report does not supplement his 2007 report. When questioned on this point, Warnock testified, "Other than correcting typos that were observed in the 2007 report, the 2012 report deals completely with new information." (Deposition of Robert Larry Warnock, Dkt. [663-6] 98:13-101:6.) In fact, development of the actual-to-expected study in the 2012 report "was not even hinted at in the 2007 report." (Id. 99:13-18.)

AVS has not provided justification for waiting nearly five years before conducting an independent expert analysis of AVS's LEs. It is clear from the introduction of Warnock's 2012 report that he was commissioned by AVS to

perform a new analysis at the last hour. Goshawk correctly points out that it was able to present an independent analysis of AVS's underwriting results by the July 2007 deadline; there is no reason AVS could not have done the same. Instead, in 2007, AVS's expert limited himself to a critique of Goshawk's experts and their methodologies. It would be unfair and prejudicial to Goshawk to allow Warnock to present a new, complex analysis at this late stage.

Therefore, Plaintiffs' Motion to Strike Warnocks's 2012 report is **GRANTED** and AVS is limited to the opinions and bases for the opinions stated in Warnock's 2007 rebuttal report.

## II.     Jury Trial Demand

AVS moves for a jury trial [675] and Goshawk moves to strike the jury demand [659][3] as untimely and unjustified. Parties may demand a jury trial on any issue triable of right by a jury by serving the other parties with a written

---

[3] AVS argues that Goshawk's motion to strike the jury demand is untimely under LR 7.1A(2), which requires this type of motion to be filed within 30 days of the beginning of discovery or with permission of the court. Goshawk points out that it could not have filed within 30 days of the beginning of discovery because the jury demand was not made until several years later. Goshawk admits that it did not seek leave of Court to file its motion, but notes that LR 7.1A(2) does not require denial as the consequence for a violation of the rule. In the interest of fairness, the Court entertains the merits of Goshawk's motion to strike along with AVS's motion for a jury trial.

demand no later than 14 days after the last pleading directed at the issue is served. Fed. R. Civ. P. 38(b). "A party waives a jury trial unless its demand is properly served and filed." Fed. R. Civ. P. 38(d). Under Rule 39(b), "[i]ssues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded."

Goshawk filed its initial complaint on September 9, 2005, alleging fraudulent misrepresentations and negligence. AVS answered on September 27, 2005. On December 6, 2010, Goshawk filed an amended complaint. On January 5, 2011, AVS answered the amended complaint and included, for the first time, a jury demand. Goshawk moved to strike AVS's jury demand [659] on August 22, 2012, over nineteen months after the demand was made.

Goshawk's amended complaint [580] dismissed two negligence claims from its original complaint and alleged three new fraudulent statements purportedly made by AVS (statements regarding AVS's independence, conservatism, and medical resources). The amended complaint has three fraud counts, each of which appeared in the original complaint. Goshawk's damages

AO 72A
(Rev.8/82)

estimate increased by over 25% – more than $30 million – between August 2007 and March 2012.

## A.    Rule 38 Waiver

Waiver of a jury trial under Rule 38 is issue specific.  See Fed. R. Civ. P. 38(b).  Goshawk argues that the amended complaint merely elaborates on and further clarifies the factual bases for Goshawk's original fraud claims, but raises no new issues sufficient to revive any right to a jury trial that existed when the action was filed in 2005. (Plaintiffs' Memorandum in Support of Motion to Strike Jury Demand ("Pl.s' MTS Memo"), Dkt. [659-1] at 1.)   According to Goshawk, the gravamen of Goshawk's claims remained the same: AVS misrepresented to Goshawk that AVS prepared LE evaluations in a professional, conservative, and independent manner, and Goshawk was damaged by AVS's provision of false and misleading LE evaluations in connection with certain CCI policies.  (Id. at 4.)  AVS maintains, however, that the increase in Goshawk's damages estimate by over $30 million is sufficient reason to revive its jury demand.  (Defendant's Response to Plaintiffs' Motion to Strike Jury Demand, ("Def.'s Resp. Br."), Dkt. [675] at 6.)  Further, AVS

contends that new factual issues raised in Goshawk's amended complaint significantly changed the posture of the case.  (Id. at 7.)

The right to "trial by jury is a vital and cherished right."  LaMarca v. Turner, 995 F.2d 1526, 1544 (11th Cir. 1993) (internal citations and quotations omitted).  "[A]s the right of jury trial is fundamental, [courts] must indulge every reasonable presumption against waiver."  Id.  Whether a party has waived the right to a jury trial on some or all issues under Rule 38 depends on whether the opposing party was "put on notice as to these claims by the original round of pleadings in [the] case."  Id. at 1546; accord Lanza v. Drexel & Co., 479 F.2d 1277, 1310 (2d Cir. 1973) (finding no new "issue" within the meaning of Rule 38 to warrant the revival of a jury demand where defendant "had been put on notice of the underlying facts and basic legal theory – fraud – upon which plaintiffs sought relief, and the character of the suit was in no way changed by the amendments").  "New facts that merely clarify the same general issues raised in the original complaint do not create new issues of fact upon which to assert a jury demand.  Amendments to pleadings thus may contain new facts which do not create new issues triable by a jury."  Id. at 1545.

When Goshawk sought to amend its complaint nearly five years after this action was filed, this Court allowed it to amend because this Court "[was] not persuaded that Plaintiff's factual assertions or alleged new theory [were] anything more than 'meat on the bones,'" and the new specific facts alleged regarding AVS's misrepresentations were "relate[d] to Plaintiffs' original Complaint." (Order, Dkt. [579].) AVS has been on notice regarding Goshawk's fraud claims from the beginning.

Furthermore, the Court finds unpersuasive AVS's argument that Goshawk's increased damages estimate is sufficient to revive AVS's jury demand under Rule 38. AVS cites In Re Financial Federated Title & Trust, Inc., 309 F.3d 1325 (11th Cir. 2002) for the proposition that the Eleventh Circuit "has held that a far less increase in claimed damages alone was significant enough to revive a previously waived" jury demand under Rule 38. (Def.'s Resp. Br., Dkt. [675] at 6.) However, that case involved an increase in damages from $10,000 in the initial complaint to $1,017,647 in the amended complaint. In Re Financial Federated Title & Trust, Inc., 309 F.3d at 1330. The Court reasoned that "raising the ante" one hundredfold created "an entirely new, more sophisticated case." Id. From the outset, this case has involved

many millions of dollars. Goshawk's increased damages estimate did not change the nature of this suit. Therefore, the Court finds that AVS cannot revive its right to a jury trial under Rule 38.

**B.    Rule 39 Motion**

Rule 39(b) allows the Court, on motion, to order a jury trial on any issue for which a jury might have been demanded. "In this circuit, the general rule governing belated jury requests under Rule 39(b) is that the trial court 'should grant a jury trial in the absence of strong and compelling reasons to the contrary.'" Parrott v. Wilson, 707 F.2d 1262, 1267 (11th Cir. 1983) (quoting Swofford v. B & W, Inc., 336 F.2d 406, 408 (5th Cir. 1979)). There are five factors for the Court to consider when weighing Rule 39(b) motions: (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial." Id.

AO 72A
(Rev.8/82)

### 1. Issues Best Tried by a Jury

Goshawk maintains that this complex action is better suited for a non-jury trial. (Pl.s' MTS Memo, Dkt. [659-1] at 2.) Trial of the case will feature information concerning the LEs, including medical records, computer driven manuals, charts and actuarial tables. Three experts are expected to testify regarding whether the overruns of AVS's LEs were by chance or part of a pattern of fraud by AVS. (Id. at 6.) The CCI contracts themselves are complex insurance products. Twenty-six CCI contracts issued to nine different assureds are at issue here. (Id.) Discovery has been extensive. To date, the parties have deposed approximately 35 witnesses, have taken approximately 55 depositions, have hired multiple experts, and have analyzed hundreds and of thousands of documents. (Id. at 7.)

It is true that this case involves a complicated area of insurance and many insurance contracts. However, as AVS argues, the root issues (as discussed above regarding AVS's motion for summary judgment) are factual disputes appropriate for resolution by a jury (e.g., scienter, the exercise of reasonable diligence, reasonable reliance, etc.). This is not a case involving contract interpretation or a case of mixed questions of law and fact. The outcome here

18

will turn on the veracity of witnesses, "dueling experts," and evaluations of "reasonable person" standards – all of which fall within the purview of a jury. Therefore, the Court finds that this case involves issues which are best tried to a jury and this factor weighs in favor of AVS.

### 2. Disruption of Schedules

This case has not been set for trial. There is no evidence that the Court or the parties will be more inconvenienced, in terms of scheduling, by a jury trial than a bench trial. Therefore, because of this circuit's preference for granting jury trials under Rule 39, this factor weighs in favor of AVS.

### 3. Degree of Prejudice to the Adverse Party

Goshawk argues that granting a jury trial at this late date would be extremely prejudicial to Goshawk because it has "already selected and engaged its expert witnesses, delivered the experts' reports, served all of its discovery demands, deposed twenty-five witnesses, and pursued document discovery of non-parties . . . – all with the understanding that the case would be tried to the Court without a jury." (Pl.s' MTS Memo, Dkt. [659-1] at 17.) However, as AVS points out, Goshawk does not specify what it would have done differently if it had known this action would be a jury trial. See Milliken & Co. v. Shaw

Industries, Inc., 978 F. Supp. 1155, 1160 (N.D. Ga. 1997) ("The Defendants have argued that they would have pursued discovery differently had they known this would be a jury trial rather than a bench trial. [They do] not specify what [they] would have done differently. The Court is not persuaded that this is a 'strong and compelling reason' to warrant denial of the Plaintiff's [Rule 39(b)] motion.") Additionally, many depositions were taken and filings submitted by Goshawk after the demand for a jury trial was filed and Goshawk was aware that a jury trial was a possibility. Therefore, the Court finds that this factor weighs in favor of AVS.

### 4. Length of Delay and Reason for Delay

Here, AVS waited more than five years after the initial complaint was filed to demand a jury trial. AVS argues, however, that the relevant period of time is between the amended complaint (when, it claims, Goshawk changed the posture of the case) and the jury trial demand, not the time between the filing of the original complaint and the demand. (Def.'s Resp. Br., Dkt. [675] at 13.) Therefore, AVS claims, there was no delay. Because they argue there was no delay in the jury demand (i.e., it was timely vis-a-vis the amended complaint), they advance no justification for a delay. (Id.) Arguably, because the Court has

already found that AVS's demand was not timely, these factors weigh in favor of Goshawk. However, because the other factors in the analysis favor AVS, the Court need not analyze the merits of AVS's arguments on these points.

Overall, the analysis favors AVS and a jury trial. The Court finds no "strong and compelling reason" not to grant AVS's Rule 39 motion, despite the lengthy delay by AVS and its lack of justification for that delay. Therefore, AVS's motion for a jury trial is **GRANTED** and Goshawk's motion to strike is **DENIED**.

## III.    Motion for Summary Judgment

The Court reserves ruling on AVS's motion for summary judgment, pending a hearing on the issue of damages. This case is **hereby set for a hearing** before the Honorable Richard W. Story on **Wednesday, February 13, 2013 at 9:30 a.m.** in Courtroom 2105, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia. The hearing will address AVS's claims that Goshawk cannot establish that its damages were proximately caused by the representations at issue, and that Goshawk's damages cannot be calculated with reasonable certainty. (See Brief in Support of Defendant's Motion for Summary Judgment, Dkt. [664-1] at 46-49.)

In its response brief, Goshawk references Attachment D to its Seventh Supplemental Initial Disclosures. (Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, Dkt. [723] at 48.) The Court does not have a copy of Attachment D. Goshawk may deliver a copy to the Court if it wishes the Court to consider the document prior to the hearing.

## Conclusion

Based on the foregoing, Goshawk's Motion to Strike Jury Demand [659] is **DENIED,** AVS's Motion for Trial [676] is **GRANTED,** and Goshawk's Motion to Strike Expert Report by Defendant's Expert R. Larry Warnock [663] is **GRANTED.**

The Court reserves ruling on AVS's Motion for Summary Judgment [664], pending a hearing on the issue of damages set for Wednesday, February 13, 2013 at 9:30 a.m.

**SO ORDERED**, this __4th__ day of February, 2013.


_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)